NOT FOR PUBLICATION (Docket No. 17)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
:
HAKIM ABDUL BOND,                   :
                                    :
          Plaintiff,                :
                                    :     Civil No. 07-6128 (RBK/AMD)
     v.                             :
                                    :     **OPINION**
ERIC TAYLOR,                        :
                                    :
          Defendants.               :
_____:

**KUGLER**, United States District Judge:

This matter comes before the Court upon motion by Defendant Eric Taylor ("Defendant") seeking summary judgment on the Complaint filed by plaintiff Hakim Abdul Bond ("Plaintiff"), alleging violations of his constitutional rights and brought pursuant to 42 U.S.C. § 1983. For the reasons set forth below, this Court will grant in part and deny in part Defendant's motion.

**I.    BACKGROUND**[1]

Following an Order granting Plaintiff's request to proceed in forma pauperis, Plaintiff's Complaint was filed on January 9, 2008. At the time the Complaint was filed, Plaintiff was an inmate at the Camden County Correctional Facility ("CCCF"). Defendant Taylor, the warden at CCCF, was alleged to have violated Plaintiff's constitutional rights. Specifically, Plaintiff makes allegations about the conditions at CCCF, including overcrowding, lack of minimal toiletries and

---

[1] Because Plaintiff did not oppose the instant motion, the background provided includes facts drawn from Plaintiff's Amended Complaint and Defendant's motion.

1

cleaning supplies, leaking ceilings, lack of unspoiled food, inmates' lack of opportunity to meet with social workers, and a lack of opportunity for showers, exercise, and phone use. In addition, Plaintiff states that an outbreak of boils and infectious diseases has spread in at CCCF due to the lack of cleaning supplies and overcrowding.

Plaintiff asserts in his Complaint, "I've filed numerous grievance forms and some, I've attached to multiply complaints." The only documents attached to Plaintiff's Complaint were his forms submitted in support of his application to proceed in forma pauperis, and he did not include any prior grievance forms. Defendant attaches to the instant motion an unsworn certification signed by Defendant Taylor and excerpts from a deposition of Plaintiff.

## II.  STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the non-moving party." Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (quoting Celotex, 477 U.S. at 331 (1986) (Brennan, J., dissenting)). The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to

establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 2007 WL 2709661 at *1 (3d Cir. Sept. 17, 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2003)).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the district court. BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. ANALYSIS

In the motion presently before this Court, Defendant requests summary judgment on Plaintiff's claims, arguing: (1) Plaintiff has failed to show that the conditions of his confinement amounted to cruel and unusual punishment, (2) the fact of sharing cells does not amount to a constitutional violation, (3) Plaintiff cannot point to any injury or pain he suffered personally that

3

would support his claims, (4) Plaintiff has failed to exhaust his administrative remedies, and (5) Defendant is entitled to qualified immunity.  Plaintiff has not opposed the instant motion.

In support of the instant motion, Defendant largely relies on Defendant Taylor's unsworn certification.[2]  An unsworn, written statement can have the "same force and effect" as a sworn declaration as long as the statement conforms to the requirements of 28 U.S.C. § 1746.  This statute requires that the unsworn written declaration include the following language: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct," followed by the declarant's signature.  28 U.S.C. § 1746(1).  Courts in the District of New Jersey have held that language that omits the phrase "under penalty of perjury" are inadequate under 28 U.S.C. § 1746.  See, e. g., Cooper v. Cape May County Bd. of Soc. Servs., 175 F. Supp. 2d 732, 742 n. 6 (D.N.J. 2001) (holding written statements that included the language "I hereby certify that all of the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are wilfully false, I am subject to punishment," failed to acknowledge penalty of perjury, and therefore the Court could not consider the statement on summary judgment); U.S. v. Branella, 972 F. Supp. 294, 300 (D.N.J. 1997) (same).  In this instance, Defendant's certification is not only lacking a statement that his representations are made under penalty of perjury, but also omits any declaration as to the veracity of the statements incorporated.

The Court finds that Defendants certification, submitted in support of its motion for summary judgment, fails to meet the requirements of Federal Rule of Civil Procedure 56(e).  The

---

[2] Defendant Taylor references the certification in his Statement of Facts, however, he does not present the Court with a Statement of Undisputed Material Facts, as required under Local Rule 56.1.

Court will strike the statement from the record, and will not consider it with respect to the instant motion for summary judgment.

    A.    **Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act of 1995 ("PLRA"), codified as 42 U.S.C. § 1997e, prisoners are precluded from contesting prison conditions in federal court until exhausting "all avenues of relief available to them within their prison's inmate grievance system." Spruill v. Gillis, 372 F.3d 218, 227 (3d Cir. 2004) (holding that the failure to "properly" exhaust administrative remedies under the PLRA constitutes a procedural default).[3]  The purpose of the exhaustion requirement is "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." Spruill, 372 F.3d at 230.  With this requirement, Congress intended to afford "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Id. at 227.

A plaintiff must pursue to completion all available administrative remedies, even if they are not "plain, speedy, and effective," do "not meet federal standards," or could not result in the relief requested in the suit. Porter v. Nussle, 534 U.S. 516, 524 (2002).  The prisoner must "carry the grievance through any available appeals process" before the remedies will be deemed exhausted. Camino v. Scott, No. 05-4201, 2006 WL 1644707, *4 (D.N.J. June 7, 2006) (citing

---

[3] Specifically, section 803(d) of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U .S.C. § 1997e(a).

Spruill, 372 F.3d at 232). Summary judgment of an inmate's claim is proper where he has failed to exhaust administrative remedies. Fortune v. Bitner, No. 07-3385, 2008 WL 2766156, *3 (3d Cir. July 17, 2008).

Here, Defendant asserts that Plaintiff failed to exhaust his administrative remedies. In so doing, Defendant only offers his certification as evidence in support of summary judgment, in particular Taylor's statement that, "There is no record of the plaintiff ever filing any grievance regarding any of the issues noting in the plaintiff's complaint." Because this evidence is the sole basis for Defendant's argument on this point, and the Court has declined to consider Defendant's certification, there remains a genuine issue of fact as to whether Plaintiff administratively exhausted his claims prior to raising them in this proceeding. Accordingly, the Court will deny Defendant's motion on this ground.

      B.      **Effect of Plaintiff's Deposition Testimony**

Defendant argues that Plaintiff cannot sustain a § 1983 claim against Defendant because he cannot show that Defendant violated his Eighth Amendment rights. Although Defendant argues the legal sufficiency of some of Plaintiff's claims, he refers to Plaintiff's own deposition testimony, attached to Defendant's motion, in which Plaintiff disavows some of his claims. Again, the Court notes that Plaintiff did not oppose Defendant's motion.

"To state a claim under [42 U.S.C.] § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Prisoners have a protected right in being incarcerated at a place of confinement confirming to the standards set forth by the Eighth Amendment. The Constitution

"does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), but neither does it permit inhumane ones, and it is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). In its prohibition of "cruel and unusual punishments, the Eighth Amendment . . . imposes duties on [prison] officials, who must provide humane reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984); see Helling, 509 U.S. at 31-32; Washington v. Harper, 494 U.S. 210, 225 (1990); Estelle v. Gamble, 429 U.S. 97, 103 (1976). The Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment. Rhodes, 452 U.S. at 346, 347. The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society." Rhodes, 452 U.S. at 346 (quoting Trop v. Dulles, 356 U.S. 86, 101 (1958)).

　　　　To state a claim under the Eighth Amendment, an inmate's allegation must include both an objective and a subjective component. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities'" . . . are sufficiently grave to form the basis of an Eighth Amendment violation." Helling, 509 U.S. at 32 (quoting Rhodes, 452 U.S. at 346). This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. Hudson v. McMillian, 503 U.S. 1, 9 (1992). The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of

7

harm. Farmer v. Brennan, 511 U.S. 825, 835 (1994); Wilson, 501 U.S. at 303.

To satisfy the objective component of an Eighth Amendment conditions of confinement claim, Plaintiff must show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. See Rhodes, 452 U.S. at 347-48; Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992). To the extent that certain conditions are only "restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay for their offenses against society. See Rhodes, 452 at 347. An inmate may fulfill the subjective element of such a claim by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." Ingalls v. Florio, 968 F. Supp. 193, 198 (D.N.J. 1997). An official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

To the extent Plaintiff grounds his claims on certain conditions which he disavowed in his deposition in this case, there is no genuine issue of material fact as to those claims. In particular, Plaintiff admits in his deposition testimony that he personally never suffered from the boils, fungus, or exposure to infectious diseases that he describes in his Complaint. Plaintiff admits that he has suffered no injury as a result of the conditions of the physical CCCF premises, i.e. leaking ceilings and physical layout of cells, aside from one minor fall which he did not report. Plaintiff stated that he was never in an altercation or interaction resulting from the alleged overcrowding at CCCF, which Plaintiff alleged in his Complaint caused eruptions of violence among inmates and led to injury. Further, Plaintiff admits that he was allowed augment his diet

8

while incarcerated at CCCF, and thus had a variety of different foods available to him.

Defendant has shown that there is no genuine issue of material fact remaining as to those of Plaintiff's claims that he effectively disavowed in his deposition testimony. As Plaintiff, by his own testimony, has not suffered injury as a result of a variety of his claims, Defendant is entitled to judgment on those of Plaintiff's § 1983 claims. Accordingly, the Court will grant summary judgment for the Defendant and against the Plaintiff on Plaintiff's claims based upon: the outbreak of boils, fungus, and infectious disease; the physical conditions of CCCF; overcrowding at CCCF; and the food available to Plaintiff.

### C. Plaintiff's Additional Claims

Defendant argues that he is entitled to summary judgment on Plaintiff's claims regarding the unavailability of cleaning and toiletry supplies. Defendants argument is grounded on his own unsworn certification that, "inmates at [CCCF] are provided with adequate supplies to clean their cells on a regular basis" as well as adequate toiletry supplies, including "bath soap, toothpaste, and toothbrushes. Because this evidence is the sole basis for Defendant's argument on this point, and the Court has declined to consider Defendant's certification, a genuine issue of fact remains as to whether CCCF did provide Plaintiff adequate cleaning and toiletry supplies. Accordingly, the Court will deny Defendant's motion on this ground.

Defendant does not make any argument with respect to Plaintiff's two additional claims: that he was not allowed adequate time for exercise, showering, or phone use and that he was not able to meet with a social worker while incarcerated at CCCF. The Court notes that the only reference in Defendant's moving papers to these of Plaintiff's claims are included in the statement of facts and in Defendant's unsworn, and unconsidered by this Court, certification.

Accordingly, the Court will deny Defendant's motion on this ground.

### IV.     CONCLUSION

For the reasons expressed herein, the Court will grant in part Defendant's motion for summary judgment, entering judgment in favor of Defendant and against Plaintiff on Plaintiff's claims based upon: the outbreak of boils, fungus, and infectious disease; the physical conditions of CCCF; overcrowding at CCCF; and the food available to Plaintiff.  The Court will DENY in part Defendant's motion, there being genuine issues of material fact as to Plaintiff's claims regarding: CCCF's provision of adequate cleaning and toiletry supplies; adequate time for exercise, showering, or phone use; and Plaintiff's inability to meet with a social worker.  An accompanying Order shall issue today.


Dated:        8-24-2009                                                      /s/   Robert B. Kugler
                                                                                ROBERT B. KUGLER
                                                                                United States District Judge